IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

**TAMAKA WASHINGTON,**

 **Plaintiff,**

v.             CIVIL ACTION NO. 3:04CV104

**GALE A. NORTON,**
**Secretary, U.S. Department of the Interior,**

 **Defendant.**

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On this day the above styled matter came before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. 45). On March 19, 2007, the plaintiff filed her Response in Opposition (Doc. 53). The Defendant then filed a Reply to Plaintiff's Response on March 26, 2007 (Doc. 54). The Court, after reviewing the above, is of the opinion that the Motion for Summary Judgment should be and is hereby **ORDERED GRANTED**.

### Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), Rule 56(c) itself provides that "a party

1

opposing a properly supported motion for summary judgment 'may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250 (See also ***Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir.1979) (summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law") (quoting ***Stevens v. Howard D. Johnson Co.***, 181 F.2d 390, 394 (4th Cir.1950)).

In *Celotex*, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp. v. Catrett***, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574 (1986).

## Facts

Plaintiff Tamaka Washington began working for the Department of the Interior at the Fish and Wildlife Service's National Conservation Training Center ("NCTC") in Shepherdstown, West Virginia, in September 1999. In October 2002, Washington was

promoted to a clerk position in the Division of Facility Operations earning a pay grade of GS-3. Washington applied and was selected for a position of increased responsibility in April 2003 and was promoted to a GS-4. In September 2005, Washington left the NCTC for a GS-5 position at a nearby Untied States Coast Guard facility.

While employed at the NCTC, Washington filed three EEO Complaints that were investigated and administratively exhausted.

Washington's initial EEO complaint was filed on January 14, 2004 and amended on February 20, 2004. The complaint was investigated between February 23, 2004 and February 25, 2004. The investigator concluded that criticism of Washington's job performance was valid, based on her performance and that there was no evidence of discrimination. The investigation further concluded that, "Complainant was [entering] mistakes into the system. Further, the incidents relied upon by the Complainant appear to be more of the nature of interpersonal actions between her, management, and employees, rather than based upon the fact that the Complainant is African-American. . . . The Complainant has not demonstrated she suffered an adverse employment action when she was told to not have personal conversations, when she was told she was performing badly, or given counseling." Final Agency Decision 1, Document No. 49-1, pages. 19-20.

Washington's second EEO complaint was filed on July 24, 2004 and investigated between October 14, 2004 and December 6, 2004. The Final Agency Decision (FAD 2) concluded that the incidents cited in Washington's second complaint were interpersonal relations problems and were not based upon race. FAD 2 also concluded that there was no evidence of retaliation against Washington for her complaints.

Washington's third EEO complaint was filed on January 11, 2005 and investigated between March 25, 2005 and April 22, 2005. The complaint alleged that Washington was given a letter of reprimand and letter of warning in retaliation for her protected EEO activities. The Final Agency Decision (FAD 3) found that management articulated legitimate non-discriminatory reasons for issuing the disciplinary letters and there was no evidence that the personnel actions were a pretext for reprisal.

The third complaint centered upon events following an internal investigation of working conditions at NCTC initiated by the center's director. The November 22, 2004, investigation was conducted to determine whether there were problems with workplace discrimination at the facility that needed correction. Through the course of the investigation Washington was identified as an employee who had filed discrimination complaints.

Washington claims that following the investigation she was subject to retaliation for filing protected EEO complaints, based on two reprimands she received. Washington was given a "Letter of Reprimand" on December 6, 2004 and "Letter of Warning" on December 2, 2004.

The December 6, 2004 Letter of Reprimand alleged that Washington acted in an unprofessional manner at a November 23, 2004 meeting with her supervisors. The meeting between Keith Mantheiy, Karen Christensen and Washington followed a series of emails seeking explanation of a coworker's report that the lights in Washington's office were turned-off at 4:00 PM, indicating she left her office early without correctly recording her departure on a time sheet. At the meeting, Mantheiy claims Washington refused to cooperate with his investigation. Washington now claims she was out of her office due to a "team delivery meeting" and she "voiced displeasure" about what she saw as a false

allegation at the meeting.

The December 2, 2004 "letter of warning" followed a coworker's report that customers had complained to her about Washington's lack of responsiveness and failure to return calls.

## Analysis

Plaintiff Tamika Washington originally filed suit in this action on October 29, 2004. Washington filed an amended complaint March 21, 2005. The Amended Complaint (Document No. 10) alleges that Washington was subject to a racially hostile work environment and that her supervisors retaliated against her for engaging in the protected activity of filing Equal Employment Opportunity (EEO) complaints.

Washington effectively withdraws her claim of a racially hostile work environment, conceding that she is "unable to present sufficient direct evidence of racial animus to satisfy the onerous legal standard to prove she was subjected to a racially-hostile work environment as that claim is defined by prevailing law." Plaintiff's Response in Opposition to Defendant's Motion For Summary Judgment, Document No. 53 at n. 3.

With respect to the remaining claim of retribution, the parties' burdens in the face of a motion for summary judgment are as set out in *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985):

> The sequence of proof and burdens prescribed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981) are applicable to retaliation cases under § 2000e-3 as well as to discriminatory treatment claims. <u>The employee is initially required to establish a prima facie case of retaliation</u> by a preponderance of the evidence. Such a prima facie case consists of three elements: 1) the employee engaged in protected activity;

5

2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action. As in disparate treatment cases, the burden of establishing a prima facie retaliation case "is not onerous." Once a prima facie case has been presented, <u>the employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation</u> raised by the prima facie case. The employer is not required to prove the absence of a retaliatory motive, but only to raise a "genuine issue of fact," as to whether retaliation for protected activity occurred. <u>Finally, if the employer produces a legitimate nondiscriminatory explanation, the employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual.</u>

***Communications Satellite Corp.***, 759 F.2d at 365 (internal citations omitted)(emphasis added).

The first element, that the employee engaged in protected activity is established with little controversy. Washington filed EEO complaints alleging racial discrimination and retribution under 42 U.S.C. § 2000e et seq.

The second element of a prima facie case of retribution requires that an employer took an adverse employment action against the protected employee. An "adverse employment action" is analyzed in ***Burlington Northern and Santa Fe Railway Co. v. White***, 126 S.Ct. 2405 (2006).

In ***Burlington***, the district court held that employment related actions that may not qualify as grounds for substantive discrimination could amount to unlawful retaliation. White's supervisors at Burlington removed her form forklift operation duty and assigning her to less desirable tasks under her job description after she made sexual harassment complaints. When White complained, Burlington suspending her for insubordination, without pay. Burlington later reinstated White, with back pay.

6

The district court holding in favor of White was affirmed by the Sixth Circuit and went before the Supreme Court. The Supreme Court affirmed, holding that, although Burlington's employee actions may not alter the conditions of White's employment as discrimination in violation of 42 U.S.C.S. § 2000e-2(a), these actions could violate the anti-retaliation provisions of 42 U.S.C.S. § 2000e-3(a). *Id.* at 2412-2413.

The Supreme Court elaborated on what employee actions could constitute retribution:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Burlington*, 126 S.Ct. at 2414-2415 (internal quotation marks omitted)(quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) and *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).

In the instant case, Washington was given a letter of reprimand and a letter of warning shortly after a third workplace investigation initiated by her racial discrimination claims. The documents were stricken from her personnel file when she later transferred to a higher paying government job at a nearby Coast Guard facility. Washington was not subject to any injury or harm as a result of these employee actions.

In addition to causing no actual harm to the plaintiff, the issuance of disciplinary letters is not likely to dissuade reasonable workers from filing or supporting EEO complaints. Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter does not alter the employee's daily work

environment. Since the merits of such a reprimand can be adjudicated without disruption, the filing of such a letter and its later withdrawal would not dissuade a worker from filing protected complaints. Furthermore, Washington actually did proceed to file additional EEO complaints after the alleged retribution against her.

Although the Court does not find the employee actions constitute retribution, if the conduct was sufficient to constitute adverse employment action, the plaintiff fails to meet her burden of producing any evidence to show a causal connection between her protected activities and the alleged retribution.

Washington makes a prima facie case for retribution due to the temporal relationship between the workplace investigation of her discrimination complaints and the verbal and written reprimands she subsequently received. Washington's workplace environment was investigated on November 22, 2004. The next day Washington was questioned about time sheet discrepancies. On December 6, 2004, Washington was formally reprimanded by letter for unprofessional conduct at the November 23, 2004 meeting. Washington was also given a letter of warning about her job performance on December 2, 2004.

Norton argues that because of Washington's serial complaints, any employee action against her would unavoidably fall near in time to her filing a protected complaint or a related investigation. However, the incidents involving a disciplinary meeting and two disciplinary letters occurring within three weeks following a workplace investigation constitutes a sufficient suggestion of retribution to shift the burden to the Defendant. *See* **Shields v. Fed. Express Corp.**, *120 Fed. Appx. 956, 964 (4th Cir. 2005).*

Because of the timing of the personnel action, Norton assumes the burden of

producing a legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation. ***Communications Satellite Corp.***, 759 F.2d at 365. In this case the Defendant meets that burden by citing three Final Agency Decisions,[1] an internal investigation finding no discrimination and by producing a timeline of email correspondence documenting management attempts to resolve Washington's timesheet anomalies. Customer complaints establishing a non-discriminatory basis for the letter of warning were also produced.

When confronted with the employer's "legitimate nondiscriminatory explanation, the employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual." ***Communications Satellite Corp.***, 759 F.2d at 357. "To disprove a legitimate nondiscriminatory explanation for adverse action offered by the employer, a plaintiff must show that the alleged retaliation would not have occurred "but for" the protected conduct." *Id.* Washington does not allege facts to demonstrate that the negative employee actions were taken against her as retribution for filing EEO complaints.

## CONCLUSION

Viewing the evidence in the light most favorable to the plaintiff and having resolved all conflicts in the evidence in her favor, the Court finds that the Defendant is entitled to judgment as a matter of law. Accordingly, the Defendant's Motion for Summary Judgment (Document No. 45) should be and is hereby **GRANTED**. It is further **ORDERED** that this

---

[1] *See* ***Chandler v. Roudebush***, 425 U.S. 840, 864 (U.S. 1976)("Prior administrative findings made with respect to an employment discrimination claim may . . . be admitted as evidence.")

action be and is hereby **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk shall transmit true copies of this Order to all counsel of record herein.

**DATED** this ___11th___ day of May 2007.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**